```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------X
In re:                                           :
                                                 :   Chapter 7 (Closed)
GENERAL VISION SERVICES, INC.,                   :   Case No.: 99-10105 (SMB)
                                                 :
                       Debtor.                   :
-------------------------------------------------X
```

## MEMORANDUM DECISION AND ORDER
## DENYING APPLICATION FOR UNCLAIMED FUNDS

**A P P E A R A N C E S:**

THE LAW OFFICES OF PERRY IAN TISCHLER, P.C.
Attorney for Atlantis Asset Recovery LLC
38-39 Bell Boulevard, Suite# 203
Bayside, New York 11361

      Perry Ian Tischler, Esq.
            Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

      Elmwood Vision Center, Inc. is a creditor of General Vision Services. Its dividend check was never cashed, and the amount necessary to satisfy it is currently held in the United States Treasury. Atlantis Asset Recovery LLC ("Atlantis") is the assignee of a judgment against Elmwood, and has applied to the Court for the payment of Elmwood's unclaimed dividend. For the reasons that follow, the application is denied without prejudice.

## BACKGROUND

      General Vision Services, Inc. filed a chapter 11 case in this Court on April 16, 1999, but its case was subsequently converted to chapter 7. On March 31, 2000, Elmwood filed an unsecured proof of claim no. 187 (the "Claim") in the amount of

$112,276.70.[1] The Claim directed notices to be sent to "90-15 Queens Blvd., Elmhurst, New York 11373." It appears that over ten years later, Elmwood's claim was ultimately allowed as an unsecured claim in the amount of $220,000.00, the chapter 7 trustee issue a check payable to Elmwood in the sum of $27,062.95 representing its distribution on its allowed claim and sent the check to the address listed in the proof of claim.

On January 26, 2012, the chapter 7 trustee filed a report entitled *Dividends Remitted to the Court*, dated Nov. 23, 2011 (ECF Doc. # 310).) The report identified the claimants who had not cashed their distributions and the amounts of the distributions. It indicated, among other things, that the trustee had sent Elmwood a check in the sum of $27,062.95. The filing of the report implied that the check had not been cashed, the trustee had stopped payment and had turned over the balance of the unclaimed funds, including Elmwood's dividend, to the Clerk of the Court. *See* 11 U.S.C. § 347(a); FED. R. BANKR. P. 3011.

Meanwhile, on March 5, 2002, 21st Century Optics, Inc. recovered a judgment in the New York Supreme Court, Queens County, against Elmwood in the sum of $32,369.00 (the "Judgment"). (*Notice of Motion for an Order to Disburse the Unclaimed Dividend Due to Elmwood Vision Center Pursuant to 28 US [sic] §2042*, dated Oct. 20, 2017 ("*Motion*") (Ex. A.) (ECF Doc. # 319).) On or about September 1, 2015, 21st Century assigned the Judgment to Atlantis. (*Id.* at Ex. B.) Atlantis tried, without success, to execute the judgment by serving a notice of garnishment on the Clerk of the Court. (*See Motion* at ¶¶ 9-11 & Ex. C.) Atlantis thereafter filed the *Motion*

---

[1] The Claim also referred to a priority claim in the amount of $889,595.20. The priority claim is not the subject of the current application.

2

seeking to compel payment to it of Elmwood's unclaimed dividend in partial satisfaction of the Judgment.

## DISCUSSION

Pursuant to Bankruptcy Code § 347(a), ninety days after the distribution in a chapter 7 case, "the trustee shall stop payment on any check remaining unpaid, and any remaining property of the estate shall be paid into the court and disposed of under chapter 129 of title 28." Chapter 129 of title 28 includes two provisions relevant to this dispute. First, under 28 U.S.C. § 2041,

> All moneys paid into any court of the United States, or received by the officers thereof, in any case pending or adjudicated in such court, shall be forthwith deposited with the Treasurer of the United States or a designated depositary, in the name and to the credit of such court.
>
> This section shall not prevent the delivery of any such money to the rightful owners upon security, according to agreement of parties, under the direction of the court.

Second, 28 U.S.C. § 2042 provides:

> No money deposited under section 2041 of this title shall be withdrawn except by order of court.
>
> In every case in which the right to withdraw money deposited in court under section 2041 has been adjudicated or is not in dispute and such money has remained so deposited for at least five years unclaimed by the person entitled thereto, such court shall cause such money to be deposited in the Treasury in the name and to the credit of the United States. Any claimant entitled to any such money may, on petition to the court and upon notice to the United States attorney and full proof of the right thereto, obtain an order directing payment to him.

After the clerk has held the funds for five years, they escheat to the United States Treasury, 3 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 347.02[1], at 347-4 (16th ed. 2017), where they are held indefinitely *in custodia legis* for the benefit of the "person entitled" to the money, and the "person entitled" to the money is the unpaid creditor. *In re Searles*, 166 F.2d 475, 477 (2d Cir. 1948) (interpreting

3

predecessor statute); *In re Dubose*, 555 B.R. 41, 44 (Bankr. M.D. Ala. 2016) ("The 'rightful owner' of unclaimed funds paid into the Court under § 347(a) is the holder of the proof of claim on account of which the trustee made the distribution") (quoting *In re Applications for Unclaimed Funds Submitted in Cases Listed on Exhibit A,* 341 B.R. 65, 69 (Bankr.N.D.Ga.2005).)  One Court has succinctly summarized the law in the following manner:

> In a bankruptcy proceeding, after 90 days have elapsed from the time funds are distributed to creditors, any checks to creditors that have not been cashed are canceled and the funds represented by the checks are "paid into the [bankruptcy] court." 11 U.S.C. § 347(a) (2000).  All such funds received by the bankruptcy court are "deposited with the Treasurer of the United States or a designated depositary, in the name and to the credit of [the] court." 28 U.S.C. § 2041 (2000).  After five years, any funds that are still unclaimed are deposited by the bankruptcy court in the United States Treasury "in the name and to the credit of the United States." 28 U.S.C. § 2042 (2000).  Thereafter, a creditor entitled to any of the funds may file a claim with the bankruptcy court, and if the claim is approved, the Treasury Department issues a check to the creditor in the principal amount of his or her distributive share.  *Id.*

*Leider v. United States*, 301 F.3d 1290, 1293 (Fed. Cir. 2002); *accord In re Parker*, 400 B.R. 55, 59 (Bankr. E.D. Pa. 2009).  Given the amount of time that has elapsed since the trustee in this case deposited the funds with the Clerk of the Court, I assume that Elmwood's unclaimed dividend has escheated to the United States Treasury.

The question presented by the *Motion* is whether a judgment-creditor can apply for the release of unclaimed funds owed to its judgment-debtor.  The Court has been unable to locate any authority directly on point, and the application gives pause.  On the one hand, there is no absolute bar to the enforcement of an attachment order against funds held in *custodial legis* provided that the attachment will not prevent the court "from disposing of the funds in accordance with the purpose for which they were

4

deposited" and will not interfere with the authority of another court.[2]  *Landau v. Vallen*, 895 F.2d 888, 893-94 (2d Cir. 1990); *accord Starboard Venture Shipping, Inc. v. Casinomar Transp., Inc.*, No. 93 Civ. 644 (SS), 1993 WL 464686, at *4 (S.D.N.Y. Nov. 9, 1993) (Sotomayor, J.)  On the other hand, Elmwood is the "claimant" and the "person entitled" to the funds, raising the possibility that granting Atlantis' application would prevent the Court from disposing of the funds in accordance with the purpose for which they were deposited.[3]

In light of these concerns, the Court invited supplemental briefing from Atlantis regarding its standing to request the unclaimed funds and the Court's authority to grant the application.  Atlantis responded with the *Movant's Brief in Support of Motion for an Order to Disburse the Unclaimed Dividend Due to Elmwood Vision Center Inc., to Creditor Atlantis Asset Recovery LLC*, dated Dec. 12, 2017 ("*Supplement*") (ECF Doc. # 320)), but the *Supplement* didn't answer the Court's question.  Aside from invoking the Court's equitable powers, Atlantis cited three cases in support of its argument that the Court has the authority to grant its application, (*Supplement* at 4), but Atlantis' authorities are inapposite.  In *In re Applications for Unclaimed Funds Submitted in Cases Listed on Exhibits A*, 341 B.R. 65 (Bankr. N.D. Ga. 2005), the bankruptcy court emphasized that the rightful owner of the funds is the holder of the proof of claim, *id.* at 69, but an assignee of the claim can petition for the unclaimed funds.  *Id.* at 72.  Atlantis

---

[2]  The application is the functional equivalent of a garnishment.

[3]  The *Motion* may also raise an issue of sovereign immunity.  In *Landau*, the Second Circuit ruled that the attachment of bail held in the court's registry by the victims of the defendant that posted the bail did not implicate concerns of sovereign immunity.  The Court stated that "[p]laintiff does not seek to compel the Clerk to remit funds to her, only to preserve the *status quo.*  The mere act of ordering the United States to continue its possession is hardly sufficient "restraint" or "compulsion" to warrant application of the doctrine."  895 F.2d at 893.  Here, Atlantis is seeking to *compel* payment.

is not the rightful owner or the assignee of Elmwood's claim. In *Louisville & N.R. Co. v. Robin*, 135 F.2d 704, 706 (5th Cir. 1943), the Court denied a motion to pay certain foreclosure sales proceeds into the court registry, an issue that is not before the Court. Finally, in *In re Pena*, 456 B.R. 451 (Bankr. E.D. Cal. 2011), the Court concluded that the successor to a secured creditor of the debtor failed to show it was entitled to the unclaimed funds because it did not demonstrate that the corresponding claim remained unpaid. *Id.* at 454-55. Atlantis is not a successor to Elmwood, and *Pena*, like the other cases cited by Atlantis, did not address the rights of a judgment-creditor to petition for unclaimed funds owed to its judgment-debtor.

The *Motion* also raises due process concerns. Atlantis served Elmwood and the United States Attorney, the latter in accordance with 28 U.S.C. § 2042. But it served Elmwood at the address listed in its proof of claim, and such service was guaranteed not to reach Elmwood. According to the New York Department of State's website, Elmwood was dissolved by proclamation on December 27, 2000, and I assume it no longer operates at the location listed in its proof of claim. In addition, it is the same address to which the trustee sent the check that Elmwood never cashed. The New York Department of State's website, in this regard, lists a different address for the service of process: "Elmwood Vision Center, Inc., 8305 Northern Blvd., Jackson Heights, New York 11372." Furthermore, if Atlantis had sought to garnish a debt owed to Elmwood under state law, it would have had to commence a special proceeding, serve the garnishee in the same manner as a summons, N.Y.C.P.L.R. § 403(c), and serve the judgment debtor in the manner of a summons or by registered or certified mail, return receipt requested. N.Y.C.P.L.R. § 5227, made applicable by FED. R. BANKR. P. 7069 and

FED. R. CIV. P. 69(a).  In short, and however unlikely it may be that Elmwood would respond to or oppose Atlantis' application after so many years, Elmwood failed to receive adequate notice of the request for its unpaid dividend.

I address one final word to Atlantis' parade of horribles listed in the *Supplement*. Atlantis argues that by refusing to honor the execution issued by the New York City Marshal, "the court in essence is allowing a Judgment Debtor to secrete their [*sic*] assets in the United States Treasury for twenty (20) years, until the Judgment is deemed expired (CPLR 211)," "the United States Treasury is an accomplice in a contemptuous enterprise, to impede creditor's rights," "the United States Government has established a 'wall' that in action, frustrates and impedes creditors rights under State Law," the Court is a "haven for wrongdoers," and the refusal to honor the execution "places the government in the role of a 'shield' from the rightful seizure of these funds to satisfy a judgment."  (*Supplement* at 3.)

These criticisms are undeserved given the difficult legal issues raised by Atlantis' application.  Furthermore, while it is not the Court's function to give legal advice, it seems that Atlantis can acquire the right to petition for Elmwood's unclaimed dividends through the exercise of the rights afforded judgement-creditors under the appropriate provisions of Article 52 of the New York C.P.L R.  Alternatively, Atlantis could file an involuntary bankruptcy petition against Elmwood, and the trustee could request the unclaimed dividend.

In conclusion, the *Motion* is denied without prejudice.  Should Atlantis renew it, it must serve Elmwood consistent with due process, and demonstrate that its

7

application is not barred by sovereign immunity, it has standing as a judgment creditor to request the unclaimed dividend and this Court has the authority to grant that request.

So ordered.

Dated: New York, New York
December 20, 2017

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge